IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LIBAN M. MOHAMUD,

       Petitioner,

v.                                        Civil Action No. 5:03CV227
                                        Criminal Action No. 5:02CR44

UNITED STATES OF AMERICA,

       Respondent.

## MEMORANDUM, OPINION, AND REPORT AND RECOMMENDATION

## I. PROCEDURAL HISTORY

On September 17, 2003, the petitioner, Liban M. Mohamud, by counsel, filed a Motion to Vacate Conviction and Sentence under 28 U.S.C. § 2255. By Order entered on October 31, 2003, the Court ordered the respondent to answer the motion. On February 2, 2004, the respondent filed United States' Response to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. On February 28, 2005, the undersigned filed a Memorandum, Opinion, and Report and Recommendation that the Court enter an Order Denying With Prejudice the petitioner's § 2255 motion and dismissing the case from the docket. On July 5, 2005, the Court remanded the case to the undersigned for an evidentiary hearing to establish the statements that the Government and Mr. Gallagher made to petitioner Mohamud regarding the possible deportation consequences of a guilty plea. An evidentiary hearing was held September 14, 2005.

**A.**    **Indictment**

On May 21, 2002, the petitioner was indicted by a federal grand jury for the Northern District of West Virginia of aiding and abetting the possession with the intent to distribute cathinone, in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2.

**B.     Conviction and Sentence**

The petitioner pled guilty to a one-count information of aiding and abetting interstate transportation in aid of racketeering ("ITAR"), in violation of 18 U.S.C. § 1952(a)(3) and 18 U.S.C. § 2.

Prior to entering the plea, the petitioner, a Somali refugee, having political asylum in the United States, was concerned that he would be deported to Somalia if convicted of the offense charged in the indictment. His attorney, William Gallagher, contacted John Parr, the Assistant United States Attorney assigned to the case. Mr. Parr contacted the General Counsel's Office of the Immigration and Naturalization Service ("INS"). Mr. Kent Frederick of INS left a voice mail message for Mr. Parr that ITAR was a deportable offense, but the petitioner would not be deported if he pleaded guilty because he was an asylee rather than a lawful permanent resident. The petitioner asserts that Mr. Parr told his attorney that ITAR was not a deportable offense.

The plea agreement was silent whether the offense was a deportable offense. Further, paragraph 13 of the plea agreement provided that there were "no agreements, understandings, or promises between the parties other than those contained in this agreement." At the plea hearing held on August 30, 2002, the petitioner testified no promises other than those in the plea agreement were made.

Following the plea agreement, the United States Probation Office prepared a pre sentence

report ("PSR"). In the report, the probation officer stated that following sentencing, INS would review the petitioner's status to determine whether he would be deported. The petitioner did not object to the PSR nor comment on the statement that INS had not yet determined whether the petitioner would be deported.

At the sentencing hearing held on October 28, 2002, the Court advised the petitioner that INS would determine whether the petitioner was subject to deportation. The petitioner did not state that any promise had been made to him regarding deportation. The Court sentenced the petitioner to ten months incarceration. The petitioner has completed his term of imprisonment and deportation proceedings were instituted.

## C.    **Contentions of the Parties**

### **Petitioner's Contentions**

(1)    Petitioner's guilty plea was involuntary and unknowing because the Government misrepresented its effect on his immigration status.

(2)    Petitioner's guilty plea is invalid because it was the product of ineffective assistance of counsel.

(3)    Mr. Mohamud may attack his plea collaterally even though he did not do so by direct appeal.

### **Respondent's Contentions**

(1)    Defendant knowingly and intelligently entered into a plea agreement.

(2)    Defendant was not wrongfully induced to plead guilty.

(3)    Defendant's counsel was not ineffective.

## D.    **Findings of Fact**

From the record and the evidentiary hearing.

Petitioner, Liban M. Mohamud, did not appear at the evidentiary hearing. On September 14, 2004, a warrant was issued by the Court for the arrest of petitioner based upon his failure to notify his probation officer of his change of address and failure to report to his probation officer for the months of August, 2004 and September, 2004. Petitioner's whereabouts are unknown.

Assistant United States Attorney John Parr testified that he discussed the issue of deportation with defense counsel William Gallagher after discovery had been given by the Government to counsel for Defendant. Mr. Parr said he told Mr. Gallagher that a Title 21 conviction was an automatic deportation. Mr. Gallagher asked Mr. Parr to ask INS whether a Title 18 conviction was automatic deportation. Mr. Parr contacted INS counsel in Philadelphia whether a Title 18 ITAR was an automatic deportation. Mr. Parr faxed a copy of the proposed Information under Title 18 to INS counsel. The INS officer left the following message on Mr. Parr's voice mail:

> "Yes, John, this is Kent Frederick with Immigration. I took a look at the proposed indictment and indeed it would be considered a deportable offense. But, given the unusual situation where this guy is only an assignee (sic) and never availed himself of adjusting his status to a lawful resident, we couldn't do anything at this point. It's an unusual quirk where his failure to do what is appropriate actually protects him from being deportable at this state. But, if you need to discuss this further, you can feel free to contact me at (215-656-7146) but I do not believe, at least where he stands now, that this would be a problem for him."

Mr. Parr gave the message left on his answering machine to Mr. Gallagher. Mr. Parr testified that the issue of deportability was not a part of the plea agreement and that no such "side deal" about deportability was made with defendant or his counsel. The issue of deportability was raised again in paragraph 43 of the Presentence Report. At the sentencing, the Judge raised the issue of paragraph 43 of the Presentence Report. There was no statement by Defendant or his counsel about the issue of deportability being a part of the plea agreement.

Mr. Gallagher testified he was appointed as CJA counsel for defendant in the underlying

4

case. From the beginning of the representation, the issue of deportability was a main concern of defendant because he was fearful for his safety if he were returned to Somalia. Mr. Gallagher testified Mr. Parr suggested that a plea to an ITAR might be acceptable to both parties because an ITAR was not a deportable offense.

Based on the representation that an ITAR offense was not deportable, defendant executed a plea to an ITAR offense. Mr. Gallagher's recollection of his first knowledge of the telephone message from INS Agent Frederick was when Mr. Parr submitted it to the Court in a letter response to paragraph 43 of the Presentence Report. Mr. Gallagher then discussed the telephone message with defendant. Based on the telephone message, it was Mr. Gallagher's opinion, defendant would not be deported if defendant pled to an ITAR offense and so advised defendant.

Mr. Gallagher testified there were no promises or agreements not in the plea agreement and that Mr. Parr never made a promise defendant would not be deported. At the plea hearing, defendant testified there were no agreements other than those contained in the plea agreement.

Paragraphs 41 through 43 of the Presentence Report discuss the probation officer's contact with INS. Mr. Gallagher's reading of Mr. Parr's notes of the telephone message from Mr. Frederick of the INS was the first time Mr. Gallagher learned an ITAR was a deportable offense. There were no promises to defendant he would not be deported. However, based upon the rest of Mr. Frederick's telephone message, Mr. Gallagher believed defendant would not be deported.

**E.   Recommendation**

Based upon a review of the record, the testimony at the evidentiary hearing and the absence of the defendant, the undersigned recommends that the petitioner's § 2255 motion be denied and

dismissed with prejudice.

## II. ANALYSIS

### A. Fugitive Disentitlement Doctrine

The Fugitive Disentitlement Doctrine limits a criminal defendant's access to a judicial system whose authority he evades. Bagwell v. Dretke, 376 F.3d 408,410 (5th Cir. 2004). The Fugitive Disentitlement Doctrine is applicable to habeas cases in appropriate circumstances. Id., at 412. The Fugitive Disentitlement Doctrine is an equitable doctrine that a court exercises in its discretion. Id., at 413B. For example, dismissal of an appeal is inappropriate for a defendant who had escaped during the district court proceedings but was in custody at the time of appeal to the circuit court. Ortega - Rodriguez v. United States, 507 U.S. 234 (1993). The factors to be considered when deciding whether to dismiss a case of a fugitive defendant relate to the different rationals justifying use of the doctrine: 1) impossibility to enforce a judgment against the defendant; 2) the case has been abandoned and defendant waives his rights; 3) to discourage escape and encourage voluntary surrender; 4) impeding the court's ability to adjudicate the case before it, and 5) the affront to the authority of the Court. Bagwell, 376 F.3d, at 411.

Here, defendant's whereabouts are unknown. Therefore, it is impossible to enforce any judgment against him. Defendant has abandoned his case and waived his rights by his voluntary absence. Dismissing a habeas action by a defendant whose whereabouts are unknown discourages escape and encourages surrender. Defendant's absence impedes the Court's ability to decide the case because it does not have the benefit of defendant's testimony or cross-examination of the same. Finally, it is the height of arrogance and affrontery to seek habeas relief from the Court and then not be available to adjudicate the petition. All five factors dictate that the habeas petition be dismissed

by adopting the fugitive entitlement doctrine in this matter.

B.  **The Evidentiary Hearing**

    1.  **The Plea was Knowing and Voluntary**.

The petitioner contends that his plea was unknowing and involuntary because he did not know he could be deported. A guilty plea must be a voluntary and intelligent decision of the defendant. Boykin v. Alabama, 395 U.S. 238, 242 (1969); North Carolina v. Alford, 400 U.S. 25, 31 (1970). A defendant must know the direct consequences of his guilty plea in order for it to be knowing and voluntary. Brady v. United States, 397 U.S. 742, 755 (1970); Cuthrell v. Director, Patuxent Ins., 475 F.2d 1364, 1365 (4th Cir. 1973). However, the defendant does not need to be informed about a collateral consequences, such as deportability, in order for the plea to be knowing and voluntary. Cuthrell. 475 F. 2d at 1366; United States v. Al-Hababeh, 72 Fed. Appx. 929, 931, 2003 WL 21920882, **2 (4th Cir. 2003) (unpublished).[1]

In fact, the petitioner acknowledges that he did not need to be informed of the collateral consequences of his plea. However, the petitioner asserts that his plea was not knowing and voluntary because it was induced by prosecutorial misrepresentations about the collateral consequences of his plea. Pursuant to United States v. Brisco, 432 F. 2d 1351, 1353 (D.C. Cir. 1970), "under appropriate circumstances the fact that a defendant has been misled as to consequence of deportability may render his guilty plea subject to attack." The court further stated that "calculations of the likelihood of deportation may thus rightly be included in the judgment as to whether an accused should plead guilty, and any actions by Government counsel that creates a

---

[1] Pursuant to Fourth Circuit Local Rule 36(c), which disfavors citation of unpublished opinions, a copy of this unpublished opinion is attached.

misapprehension as to that likelihood may undercut the voluntariness of the plea." Id., at 1354.

"The government may not be required to inform defendants of collateral plea consequences such as deportation, but it does have an obligation not to mislead them." United States v. Russell, 686 F.2d 35, 41 (D.C. Cir. 1982) (the prosecutor stated that "[w]e haven't explored it thoroughly, but it would appear that if Mr. Russell were convicted under the felony count, marijuana again, that he might be subject to deportation, which would not be the case if he took the misdemeanor." The D.C. Circuit found this to be a clear misstatement of the law and that the plea was involuntary).

Mr. Gallagher testified at the evidentiary hearing that Mr. Parr told him that an ITAR offense was not deportable. Mr. Parr testified he gave Mr. Gallagher the contents of the telephone message from Mr. Frederick of INS but that Mr. Parr made no representation on the issue of deportation. Mr. Gallagher has no recollection of this. Mr. Parr and Mr. Gallagher have practiced before the undersigned for many years. Both are honorable and competent counsel. The undersigned believes the testimony by both is their honest recollection.

However, even if the Government told the petitioner ITAR was not a deportable offense, which Mr. Parr says he did not, such does not render the plea involuntary or unknowing. The record as a whole clearly indicates that the plea was voluntary. First, there was no express promise that the petitioner would not be deported. Further, the pre-sentence investigation report indicates that INS would need to review the file before making a final determination regarding whether the petitioner would be deported. In response to the pre-sentence report, the Government provided the transcribed voice mail message received from INS.

The petitioner never attempted to withdraw his plea after the probation officer had

stated before sentencing that INS would determine whether to deport the petitioner after sentencing. Lastly, at sentencing, the Court advised the petitioner that the sentencing would allow INS to determine whether he should be deported. The petitioner never made any statement anywhere on the record that it was his understanding that he would not be deported.

The undersigned finds that the prosecution did not commit prosecutorial misconduct and the petitioner could not have been misled regarding the possibility of being deported prior to the sentencing hearing. Defendant took no action to withdraw his plea. Thus, the undersigned finds the petitioner voluntarily entered his plea.

        2.        **<u>The Petitioner was not Provided Ineffective Assistance of Counsel</u>**.

The petitioner asserts that he was provided ineffective assistance of counsel because his attorney should not have relied upon the advice of the Government and should have done his own investigation.

Counsel's conduct is measured under the two part analysis outlined in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. <u>Id</u>., at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Id</u>., at 689-90.

Second, the petitioner must be prejudiced by counsel's performance. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probablity sufficient to undermine confidence in the outcome." Id. at 694. If the defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. Fields v. Att'y. Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir.) cert. denied, 506 U.S. 885 (1992).

A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden regarding the prejudice prong: he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988), cert. denied, 488 U.S. 843 (1988).

The petitioner asserts that "there is a reasonable probability that, if it had not been for the erroneous advise of counsel, Mr. Mohamud would have rejected the plea offer and gone to trial." However, the petitioner's assertion is entitled to little weight. This is even more so because petitioner has absented himself from these proceedings. Prisoner's voluntary conduct prevents the undersigned from having more than his bare allegation to decide this issue. The petition must be based on more than a "bare allegation that but for counsel's error, he would have pleaded not guilty and gone to trial." Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994). The petitioner has not met the Hill standard. The petitioner stated at the plea hearing that he had no defense, and he offers no support that he would have not pled guilty.

Moreover, the petitioner has not met the Strickland standard for a claim of ineffective assistance of counsel. The "failure to advise him of a collateral penalty cannot be held to be below an objective standard of reasonableness." Torrey v. Estelle, 842 F.2d 236-37 (9th Cir. 1988). "An

attorney's failure to advise a client that deportation may result from a conviction does not constitute ineffective assistance of counsel." United States v. Yearwood, 863 F.2d 6, 7-8 (4th Cir. 1988). Further, petitioner cannot say he did not know of the possibility of being deported prior to the sentencing hearing, yet he took no action to withdraw his plea.

However, the petitioner asserts that he actually had a conversation with his attorney regarding deportation and his attorney misrepresented the deportation consequences of the petitioner's plea. In support of his contention that he was provided ineffective assistance of counsel, the petitioner relies on United States v. Gajendragadkar, 149 F. 3d 1171, 1998 WL 352866, **2 (4th Cir. 1998) (unpublished).[2] In Gajendragadkar, the Fourth Circuit found that the defendant was provided ineffective assistance of counsel because his attorney misrepresented the deportation consequences of his plea Gajendragadkar is not binding on this Court as it is an unpublished decision. Furthermore, it is factually distinguishable from the instant case. In Gajendragadkar, the petitioner was specifically told by his attorney that any retroactive change in the law would not cause his conviction to result in his deportation. While Gajendragadkar's attorney specifically told him he would not be deported at least prior to the sentencing hearing, petitioner knew prior to sentencing an ITAR was a deportable offense and took no action to withdraw his plea.

The record reveals, through Mr. Frederick's telephone message, that whether the petitioner would be deported had not been determined. Specifically, the PSR revealed that INS would determine after sentencing whether the petitioner should be deported. Further, the Court

---

[2] Pursuant to Fourth Circuit Local Rule 36(c), which disfavors citation of unpublished opinions, a copy of this unpublished opinion is attached.

11

mentioned that INS would be determining whether he should be deported. At no point did the petitioner indicate that he did not understand that his offense could be a deportable offense. Consequently, the petitioner was not prejudiced by his attorney's alleged misrepresentation and he was not provided ineffective assistance of counsel.

### III. RECOMMENDATION

For reasons stated herein, it is accordingly recommended that the Court enter an Order **DENYING WITH PREJUDICE** the petitioner's § 2255 motion and dismissing the case from the docket.

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waive of the right to appeal from a judgment of this Court based upon such Recommendation.[3]

The Clerk of Court is directed to mail a copy of this Recommendation to the petitioner, counsel for the petitioner, and the United States Attorney for the Northern District of West Virginia.

DATED:	January 10, 2006

---

[3] 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F. 2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE