IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LIBAN M. MOHAMUD,

    Petitioner,

v.                                 Civil Action No. 5:03CV227
                                    (Criminal Action No. 5:02CR44)
UNITED STATES OF AMERICA,                       (STAMP)

    Respondent.

**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE**

I. Procedural History

On September 17, 2003, the petitioner, Liban M. Mohamud, by counsel, filed a motion to vacate, set aside, or correct a conviction and sentence pursuant to 28 U.S.C. § 2255.

This Court referred the case to United States Magistrate Judge James E. Seibert, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), to recommend disposition of these matters. The magistrate judge ordered the government to respond to the § 2255 motion, and on February 2, 2004, the government filed its response.

On February 28, 2005, Magistrate Judge Seibert filed a report recommending that the petitioner's § 2255 motion be denied with prejudice. On July 5, 2005, this Court remanded the case to the magistrate judge for an evidentiary hearing to establish the statements that the government and William C. Gallagher ("Gallagher"), the petitioner's former attorney in the criminal

matter,[1] made to the petitioner regarding the possible deportation consequences of a guilty plea to the charge of aiding and abetting interstate transportation in aid of racketeering in violation of 18 U.S.C. § 1952(a)(3) and 18 U.S.C. § 2.  The magistrate judge held a hearing on September 14, 2005.  On October 21, 2005, the petitioner filed a memorandum regarding applicability of the fugitive disentitlement doctrine.

On January 10, 2006, Magistrate Judge Seibert filed a report recommending that the petitioner's § 2255 be denied with prejudice. The magistrate judge also informed the parties that if they objected to any portion of his recommendation, they must file written objections within ten days after being served with a copy of his recommendation.  On January 25, 2006, the petitioner filed objections to the report asserting that: (1) the fugitive disentitlement doctrine does not apply to this action; and (2) the petitioner's conviction must be vacated due to ineffective assistance of counsel.  The government filed a response to the petitioner's objection.

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to make a <u>de novo</u> review of those portions of the magistrate judge's findings to which objection is made.  This Court has now made an independent <u>de novo</u> consideration of all of the matters now

---

[1]Attorney Gallagher's representation was terminated after the petitioner was sentenced.

before it and is of the opinion that the magistrate judge's report and recommendation should be affirmed in its entirety.

## II. Facts

On May 21, 2002, the government filed an indictment charging the petitioner with aiding and abetting with the intent to distribute cathinone, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2. On August 30, 2002, the petitioner signed a plea agreement in which he agreed to plead guilty to a one-count information of aiding and abetting interstate transportation in aid of racketeering ("ITAR") in violation of 18 U.S.C. § 1952(a)(3) and 18 U.S.C. § 2. The government also agreed to dismiss the indictment filed May 21, 2002.

Prior to entering the plea, the petitioner, a Somali refugee having political asylum in the United States, stated to his attorney, Gallagher, that he was concerned that he would be deported to Somalia if he was convicted of the ITAR offense charged in the information. Attorney Gallagher contacted John C. Parr, the Assistant United States Attorney ("AUSA Parr") assigned to the case. In turn, AUSA Parr contacted the General Counsel's Office of the Immigration and Naturalization Service ("INS"). Kent Frederick ("Frederick") of the INS left a voice mail message for AUSA Parr which stated that ITAR was a deportable offense, but the petitioner would not be deported if he plead guilty because he was an asylee rather than a lawful permanent resident. The petitioner asserts

that AUSA Parr told his attorney that ITAR was not a deportable offense.

The plea agreement did not state whether the ITAR offense was a deportable offense. In addition, paragraph 13 of the plea agreement stated that there were "no agreements, understandings, or promises between the parties other than those contained in this agreement." At the August 30, 2002 plea hearing, the petitioner testified that nothing further had been agreed to, either orally or in writing, that was not contained in the plea agreement.

The United States Probation Officer prepared a presentence report ("PSR") following the plea agreement. In the PSR, the probation officer stated that following the sentencing, INS would review the petitioner's status to determine whether he would be deported. The petitioner did not object to the PSR nor did he comment on the statement that INS had not yet determined the status of his deportation.

On October 28, 2002, this Court held a sentencing hearing and advised the petitioner that INS would determine whether the petitioner was subject to deportation. The petitioner did not state that the government or his attorney had promised him that he would not be deported. The petitioner was sentenced to ten months incarceration. The petitioner has completed his term of imprisonment and deportation proceedings have been instituted against him.

4

On September 14, 2004, a warrant was issued by this Court for the arrest of the petitioner based upon his failure to notify his probation officer of his change of address and failure to report to his assigned probation officer for the months of August and September 2004. On September 14, 2005, the magistrate judge held an evidentiary hearing. The petitioner was not present at the hearing.

AUSA Parr testified that he discussed the issue of deportation with Attorney Gallagher after discovery had been given by the government to counsel for the petitioner. AUSA Parr testified that he told Attorney Gallagher that a Title 21 conviction would result in an automatic deportation. AUSA Parr contacted the INS to inquire whether a Title 18 conviction resulted in an automatic deportation. AUSA Parr faxed a copy of the proposed information under Title 18 to INS's counsel. INS Agent Frederick left the following message on AUSA Parr's voice mail:

> Yes, John, this is Kent Frederick with Immigration. I took a look at the proposed indictment and indeed it would be considered a deportable offense. But, given the unusual situation where this guy is only an assignee (sic) and never availed himself of adjusting his status to a lawful resident, we couldn't do anything at this point. It's an unusual quirk where his failure to do what is appropriate actually protects him from being deportable at this state. But, if you need to discuss this further, you can feel free to contact me at (215-656-7146) but I do not believe, at least where he stands now, that this would be a problem for him.

(Report and Recommendation at 4.)

AUSA Parr testified that he provided Attorney Gallagher with Agent Frederick's message. AUSA Parr further stated that the issue of deportability was not a part of the plea agreement and that there was no deal made between the government and the petitioner or his counsel that the petitioner would not be deported.

Attorney Gallagher testified that AUSA Parr suggested that a plea to an ITAR offense might be acceptable to both parties because an ITAR offense was not a deportable offense. Based on the representation that ITAR was not a deportable offense, the petitioner executed a plea to an ITAR offense. Attorney Gallagher's recollection of his first knowledge of the telephone message from INS Agent Frederick was when AUSA Parr submitted it to the Court in a letter response to paragraph 43 of the PSR. Attorney Gallagher then discussed the telephone message with the petitioner. Based upon the telephone message, Attorney Gallagher advised the petitioner that, in his opinion, the petitioner would not be deported if he pled guilty to the ITAR offense.

Attorney Gallagher testified that all of the agreements were contained in the plea agreement. Specifically, he stated that AUSA Parr never made a promise that the petitioner would not be deported. As stated above, the petitioner also testified at the plea hearing that there were no agreements other than those contained in the plea agreement.

Finally, paragraphs 41 through 43 of the PSR discuss the probation officer's contact with INS. There was no testimony that a promise was made to the petitioner that he would not be deported. Instead, the testimony of Attorney Gallagher was that he based his belief that the petitioner would not be deported upon INS Agent Frederick's message.

The petitioner is now collaterally attacking his conviction and sentence on the following grounds:

1. his plea was involuntary and unknowing because the government misrepresented its effect on his immigration status;

2. his guilty plea is invalid because it was the product of ineffective assistance of counsel; and

3. he may attack his plea collaterally even though he did not do so by direct appeal.

The petitioner by his counsel also asserted in his memorandum regarding applicability of the fugitive entitlement doctrine that the fugitive disentitlement doctrine does not apply in this civil action.

### III. Applicable Law

A. Rule 11 Requirements

Federal Rule of Criminal Procedure 11 governs the validity of guilty pleas. The court accepting a guilty plea must address the defendant personally in open court and inform him of the rights that he is waiving by changing his plea. Fed. R. Crim. P. 11(b).

7

The court must also inquire as to whether the plea is voluntary. Id. In order to be valid, a guilty plea must be a "knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970). Thus, if the defendant fails to understand his constitutional protections and the charges made against him, the guilty plea is invalid and should not be accepted. Henderson v. Morgan, 426 U.S. 637, 645 (1976).

Rule 11 also requires the parties to disclose the terms of the plea agreement in open court. Fed. R. Crim. P. 11(c)(2). "The purpose of Rule 11 is not only to detect and reject involuntary and unknowing guilty pleas but also to produce a suitable record of the plea and plea agreement." United States v. Friedland, 879 F. Supp. 420, 427 (D.N.J. 1995). The disclosure of the plea agreement on the record is crucial, as "the record becomes the embodiment of the deal reached between the defendant and the prosecution." Id.

B.  Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court articulated the standards used to measure ineffective assistance of counsel. The Court stated that "[t]he benchmark for judging any claim of ineffectiveness of counsel must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. Thus, in order to prove an

ineffective assistance claim, a defendant must show that "counsel's performance was deficient" and that "counsel's errors were so serious as to deprive the defendant of a fair trial . . . ." Id. at 687. Under this two-prong test, a claim will be successful only if (1) counsel made significant missteps, and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

IV. Discussion

A. Fugitive Disentitlement Doctrine

The fugitive disentitlement doctrine limits a criminal defendant's access to a judicial system whose authority he evades. Bagwell v. Dretke, 376 F.3d 408, 410 (5th Cir. 2004.). The fugitive disentitlement doctrine is applicable to habeas cases in appropriate circumstances. Id. at 412. The fugitive disentitlement doctrine is an equitable doctrine that a court exercises in its discretion. Id. at 413.

Bagwell sets forth five factors that should be considered when determining whether to dismiss an action brought by a fugitive defendant. The five factors are as follows: (1) the impossibility to enforce a judgment against the defendant; (2) whether the case has been abandoned by the defendant and he waived his rights; (3) whether dismissing the action would discourage escape and encourage voluntary surrender; (4) whether the defendant is impeding the

court's ability to adjudicate the case before it; and (5) the affront to the authority of the court. Id.

In the present § 2255 action, the petitioner's whereabouts are unknown. This Court finds that it is impossible to enforce a judgment against the petitioner. Since the petitioner cannot be located, he has abandoned his case and waived his rights by voluntary absence. By this Court dismissing the petitioner's § 2255 action, it would discourage escape and encourage surrender. The petitioner's absence also impedes this Court's ability to decide this case because the petitioner refuses to communicate with his counsel or attend hearings on his § 2255 motion. Finally, it is an insult upon the court to seek habeas relief in this Court and then fail to assist the court in its adjudication of the petition.

In his objection, the petitioner's counsel asserts that there is no evidence that the petitioner is attempting to thwart the law while simultaneously benefitting from it. However, an arrest warrant was issued on September 14, 2004. The petitioner has failed to report to the probation office as required. Further, on September 14, 2005, the petitioner failed to attend the evidentiary hearing regarding the § 2255 motion he filed. Petitioner's counsel failed to provide any reason for why the petitioner was absent. In fact, petitioner's counsel acknowledged that he does not know where the petitioner is currently located. (Pl.'s Objection to Report and Recommendation at 3.)

Even though this Court finds that the fugitive disentitlement doctrine applies, it will further discuss the petitioner's allegations in his § 2255 motion and the assertions that he raises in his objections to the magistrate judge's report and recommendation.

B.  Plea Hearing

The petitioner argues that his plea was not voluntary because he was not advised that he could be deported.

"Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992). In the present case, the record clearly reflects that, during the course of the colloquy, the petitioner stated that he did not believe that he had any other side agreements or deals with the government that were not contained in the plea agreement. See Order Accepting Guilty Plea (Doc. No. 5). The plea agreement also made no representation that the petitioner would not be deported. This Court further notes that neither of the attorneys addressed any agreement regarding deportation issues at the plea hearing, and the petitioner never raised the issue with this Court before entering his plea.

However, the PSR indicated that INS would need to review the file before making a final determination regarding whether the petitioner would be deported. In response to the PSR, the

government provided a transcribed copy of the voice mail message from INS Agent Frederick. The petitioner did not attempt to withdraw his plea after the probation officer informed him that the INS would determine whether to deport him after sentencing. Finally, at sentencing this Court advised the petitioner that the sentencing would allow INS to determine whether he should be deported. The petitioner failed to make a statement on the record that he believed that he would not be deported.

Thus, given the petitioner's representations at the plea hearing, this Court is satisfied that the petitioner's plea was a "knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." Brady, 397 U.S. at 748. Accordingly, this Court finds that the petitioner's contention that his plea was involuntary is without merit.

C. Ineffective Assistance of Counsel

The petitioner asserts that his counsel was ineffective in relying upon the advice of the government without further research into the issue of deportation.

As previously noted, an ineffective assistance claim will be successful only if (1) counsel made significant missteps, and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

In his objections, the petitioner asserts that the magistrate judge held that a petitioner who raises an ineffective assistance challenge to a guilty plea must face a higher burden then one who challenges the outcome of his trial. The petitioner's statement is incorrect. The magistrate judge stated that the petitioner who asserts an ineffective assistance of counsel claim has a "higher burden regarding the prejudice prong" meaning that the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would have not pleaded guilty and would have insisted on going to trial." (Report and Recommendation at 10.) The magistrate judge does not mention the burden of proof on a petitioner who challenges the outcome of his trial. Accordingly, this Court finds that the petitioner's objection that "a defendant who raises an ineffective assistance challenge to a guilty plea must face an 'even higher burden' than one who challenges the outcome of his trial" is without merit. (Pl.'s Objection to Report and Recommendation at 5.)

With respect to the Strickland test, this Court can find no evidence that any error on the part of counsel in explaining the consequences of the plea changed the outcome of the proceeding. The petitioner asserts that "there is a reasonable probability that, if it had not been for the erroneous advice of counsel, the petitioner would have rejected the plea offer and gone to trial." (Pl.'s § 2255 at 9; Report and Recommendation at 10.) There is no

evidence to substantiate the petitioner's allegation. The petitioner had the opportunity to provide further evidence at the September 14, 2005 evidentiary hearing regarding his § 2255 motion but he failed to attend the hearing.

As previously noted, this Court conducted a colloquy at the plea hearing in which this Court inquired as to whether the petitioner had fully discussed this case with counsel and was satisfied with counsel's representation, and whether he was aware of and understood all of the terms of the plea agreement. At that time, the petitioner had no concerns regarding the quality of his counsel's representation or the terms of the plea agreement.

The petitioner states in his objections that "[i]t cannot be reasonably suggested that he [petitioner] would willingly have pleaded guilty, if he knew he was choosing <u>certain</u> deportation" (emphasis added). (Pet'r's Objection ¶ III at 5.) First, the petitioner was not choosing certain deportation. Deportation was a matter that INS would have to further investigate. Second, even after the petitioner knew of the possibility of being deported, prior to the sentencing hearing, he did not attempt to withdraw his plea of guilty.

The petitioner asserts that he had a conversation with Attorney Gallagher regarding his deportation status and the petitioner asserts that Gallagher misrepresented the deportation consequences of the petitioner's plea of guilty. The petitioner

14

cites to United States v. Gajendragadkar, 149 F.3d 1171 (4th Cir. 1998), an unpublished opinion, for the holding that an attorney's misrepresentation of plea consequences constitutes ineffective assistance of counsel.

This Court finds that the facts of Gajendragadkar can be distinguished from the facts of this case. Id. In Gajendragadkar, Dr. Subhash Gajendragadkar ("Gajendragadkar") was told that he would not be deported. Id. at *2. Gajendragadkar was never informed that he could possibly be deported at any time during the plea hearing or sentencing. Id. Thus, the court found that there was a reasonable probability that but for the counsel's errors Gajendragadkar would not have plead guilty. Id.

In the present action, Attorney Gallagher was in error by telling the petitioner that he would not be deported. However, the record reveals that the petitioner knew before sentencing, through INS Agent Frederick's transcribed telephone message, that he could be deported. The PSR also revealed that INS would determine after sentencing whether the petitioner should be deported. In addition, this Court mentioned to the petitioner that INS would need to determine whether he should be deported. The petitioner failed to state at any time before or during his sentencing that he did not understand that his offense could be a deportable offense. The petitioner also did not attempt to withdraw his plea of guilty.

15

Accordingly, the petitioner's claim of ineffective assistance of counsel with respect to the advice given regarding his guilty plea is without merit.

## V. Conclusion

This Court finds that Magistrate Judge Seibert has examined all of the petitioner's claims carefully and has provided clear explanations for his recommendations. After de novo consideration of the record, this Court hereby ACCEPTS and ADOPTS the magistrate judge's report and recommendation.

Accordingly, for the reasons stated above, it is hereby ORDERED that petitioner Liban Mohamud's motion pursuant to 28 U.S.C. § 2255 is DENIED WITH PREJUDICE. It is further ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED: June 30, 2006

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE